# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**DONOVAN HENDERSON**  **PLAINTIFF**
**ADC #104041**

**V.**           **NO. 4:20-cv-00026-BRW-ERE**

**WILLIAM BENTON,** *et al.*           **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.   Procedure for Filing Objections:**

This Recommendation for dismissal has been sent to United States District Judge Billy Roy Wilson. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Judge Wilson may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

**II.   Background:**

Plaintiff Donovan Henderson, an Arkansas Division of Correction ("ADC") inmate, filed this civil rights lawsuit under 42 U.S.C. § 1983 without the help of a lawyer. *Doc. 2.* The only remaining claim before the Court is Mr. Henderson's claim that Defendants William Benton, Chris Horan, and Uchenna Ann Onyia-Murphy

("Medical Defendants") failed to transfer him from the Maximum Security Unit to a medical facility, such as the Ouachita River Unit, as raised in grievances MX-19-1522 and MX-19-1544.[1] In his complaint, Mr. Henderson originally sought money damages *Doc. 2 at p.31*. However, during his deposition, Mr. Henderson clarified that he only seeks a transfer to "the hospital side in the Special Needs Unit." *Doc. 72-2 at pp.15, 26*.

The Medical Defendants have now filed a motion for summary judgment, statement of undisputed facts, and brief in support. *Docs. 39, 40, 41*. Mr. Henderson failed respond to the Medical Defendants' motion, and the time to do so has passed. However, Mr. Henderson also filed a motion for summary judgment, statement of undisputed facts, a brief in support of his motion, and an affidavit. *Docs. 78, 79, 80, 81*. The Medical Defendants have responded to Mr. Henderson's motion. *Docs. 82, 83*.

Thus, the issues are fully briefed and ripe for the Court's review.

### III. <u>Discussion:</u>

#### A. Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as

---

[1] The Court previously dismissed all other claims Mr. Henderson raised in this lawsuit based on his failure to fully exhaust his administrative remedies. *Doc. 45*.

to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if - but only if - the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

**B.   Factual Background[2]**

On February 5, 2019, Mr. Henderson was transferred from the Ouachita River Unit to the Maximum Security Unit. *Doc. 71-1 at p.64.* On February 7, Defendant Horan evaluated Mr. Henderson and noted "inmate to see ophthalmology to assess eyes for effects of sarcoidosis." *Doc. 71-1 at p.63; Doc. 72-2 at pp.12-13.* "Sarcoidosis is a disease c[]aracterized by the growth of tiny collections of inflammatory cells (granulomas) in any part of the body. Most commonly

---

[2] The facts are taken from: (1) Mr. Henderson's medical records *(Doc. 72-1)*; (2) Mr. Henderson's deposition testimony *(Doc. 72-2)*; (3) the affidavit of Dr. Nannette Vowell *(Doc. 72-3)*; (4) Mr. Henderson's complaint *(Doc. 2)*; and (5) Mr. Henderson's affidavit *(Doc. 80)*.
Unless otherwise stated, the facts are undisputed.

sarcoidosis affects the lungs and lymph nodes, but it can also affect the eyes, skin, heart[,] and other organs." *Doc. 72-3 at p.1.*[3]

On March 15, medical staff at the Jones Eye Institute[4] evaluated Mr. Henderson. *Doc. 71-1 at p.63.*

On April 12, Nurse Locklear (not a party to this lawsuit) examined Mr. Henderson. *Id. at p.59.* At that time, Mr. Henderson stated that he was losing vision in his left eye. Nurse Locklear issued Mr. Henderson a "no duty" script. *Id.*

On April 15, medical staff at the Jones Eye Institute again examined Mr. Henderson. *Id. at p.58.*

The following day, Mr. Henderson requested that his prescription medications be refilled. *Id.* LPN Tilley (not a party to this lawsuit) noted that "Meds ha[ve] already been ordered and delivered when I checked." *Id.* On the same day, Nurse Johnson (not a party to this lawsuit) spoke with a medical provider at the Jones Eye Institute. "[T]hey stated inmate requested them to specifically type the restrictions

---

[3] It is undisputed that Mr. Henderson suffers from sarcoidosis. In his affidavit, Mr. Henderson states that he was diagnosed with sarcoidosis on or about December 11, 2018. *Doc. 81 at p.1.* In their motion, the Medical Defendants state that Mr. Henderson was diagnosed with sarcoidosis on or about February 5, 2019. *Doc. 72 at p.1.* In their response to Mr. Henderson's statement of undisputed facts, they explain that, in December 2018, Mr. Henderson had a diagnosis of "Sarcoidosis, infection, granulomatous disorders (Berryllosis, etc.)." *Doc. 72-1 at p.69.* Although this fact is disputed, it is not material to this Court's discussion.

[4] The Jones Eye Institute, formally the Harvey and Bernice Jones Eye Institute, is located on the University of Arkansas for Medical Services campus in Little Rock, Arkansas, and has doctors representing every ophthalmic subspeciality. See https://eye.uams.edu/about-us/.

he requested. After further investigation [,] it was determined by Jones [E]ye that these limitations are not needed and he can work outside*." Id.*

On May 8, Mr. Henderson filed a sick-call request. *Id. at p.54*. He complained that his "eye is swelling[,] hurting badly[,] and getting worse by the day." Mr. Henderson stated that he had stopped using the steroid eye drops because they were making his eyes swell. *Id*. Nurse Jacks (not a party to this lawsuit) noted: (1) mild swelling in Mr. Henderson's left eye; and (2) that Mr. Henderson was scheduled to be seen at the Jones Eye Institute in approximately one week. *Id*.

On May 17, medical staff at Jones Eye Institute examined Mr. Henderson. *Id. at p.53*.

On May 21, Mr. Henderson underwent laser surgery to his left eye. *Id. at p. 52*.

The following day, medical staff at UAMS examined Mr. Henderson for "Bil Anterior Granulomatous Uveltis." *Id. at p. 51*. They prescribed Mr. Henderson cyclopentolate for 30 days. On the same day, Mr. Henderson was not able to be seen by the pulmonologist due to the eye surgery that he underwent the previous day. *Id.*

On June 11, Mr. Henderson submitted a sick-call request complaining of swelling in his left eye. *Id. at p. 48*. Mr. Henderson explained that his eye had been swollen since his laser surgery. Nurse Jacks examined Mr. Henderson and noted "no swelling present." *Id.*

On June 14, medical staff at Jones Eye Institute again examined Mr. Henderson. *Id. at pp.47-48.* At that time, they prescribed Mr. Henderson a daily vitamin and calcium carbonate antacid for 30 days. *Id. at p. 47.*

On June 21, Mr. Henderson submitted a sick-call request complaining of: (1) shortness of breath; (2) loss of vision in his right eye; and (3) extreme pain in his left eye. *Id. at p.46.* Nurse Jacks noted "Resp. even and unlabored. Lungs clear to all lobes. Good breath sounds. Room air pulse ox 95%. Inmate states he has 11[-] year history of smoking. Inmate has appointment with Jones Eye Institute." *Id.*

On July 2, Defendant Horan examined Mr. Henderson and issued him a "no outside duty" script. *Id. at pp.45-46.* He noted that Mr. Henderson had "possible history of sarcoidosis and bilateral anterior granulomatous uveitis, mostly blind in left eye." *Id. at p.45.*

On July 12, Defendant Onyia-Murphy examined Mr. Henderson and scheduled an appointment for Mr. Henderson to be seen by a pulmonologist. *Id.*

On July 15, Dr. Sallam at the Jones Eye Institute examined Mr. Henderson. *Doc. 2 at p.35.* At that time, Dr. Sallam prescribed Mr. Henderson: (1) prednisolone acetate drops; (2) oral prednisone; and (3) calcium carbonate. *Doc. 2 at p.37.* Dr. Sallam recommended that Mr. Henderson be "allowed to not participate in outdoor manual labor at this time." *Id.*

On July 16, Defendant Horan noted: (1) Mr. Henderson's history of panuveitis OS and sarcoidosis; (2) "no outside duty script"; and (3) "scheduled visit with pulmonology to work up sarcoidosis." *Id. at pp.43-44.*

On July 22, LPN Whitmore (not a party to this lawsuit) examined Mr. Henderson during a sick-call encounter based on his complaints of extreme pain as a result of his eye surgery. *Id. at p.39.* She noted "[n]o signs or symptoms of distress [] at t[h]is time." *Id. at p.40.*

On July 24, Defendant Horan noted "no s/s of acute distress" and Mr. Henderson had no medical complaints on that date.[5] *Id. at p.39.*

The following day, Defendant Horan prescribed Mr. Henderson prednisone for 30 days. *Id. at p.38.*

On August 1, medical staff at the Jones Eye Institute examined Mr. Henderson. *Id. at p. 37.* On the same day, Defendant Horan noted a history of "panuveitis and possible anterior scleritis sarcoidosis." Defendant Horan provided Mr. Henderson a prescription for prednisone and prednisone drops. *Id. at p.38.*

On August 5, Mr. Henderson submitted a sick-call request complaining of swelling in his ankles and pain in his ears and teeth when taking the prednisone

---

[5] According to a letter sent from Shelly Byers to Mr. Henderson on August 14, 2019, a pulmonologist examined Mr. Henderson on July 24, 2019, "at which time it was noted you had no pulmonary symptoms." *Doc. 2 at p.70.*

drops. LPN Whitmore noted "slight edema" to Mr. Henderson's left ankle, but "[n] signs or symptoms of distress" at that time. *Id. at p. 37.*

On August 12, Mr. Henderson requested a medical transfer. *Id. at p.35.* Defendant Horan noted "request forwarded." *Id.* According to the encounter notes for Mr. Henderson's August 14th visit, in his sick-call request, Mr. Henderson wrote:

> On 7-15-2019, Doctor Ahmed A. Sallem, MD at Jones Eye Clinic recommended that arrangements be made to move me to medical facility-unit where I can receive medical treatment regularly and have blood tests weekly for the first months then monthly. This medical plan has been ignored and denied. I have not had any blood test nor do any medical staff know what stage of my illness to properly treat me. I have the right to be evaluated and know what stage I'm at.

*Id. at p.34.*

On August 14, Shelly Byers responded to Mr. Henderson's letter explaining that "[t]he unit provider has *not* noted that a medical transfer is clinically indicated for you" and that "your medical condition is being properly addressed at your current unit." *Doc. 2 at p. 70* (emphasis added).

On September 30, Mr. Henderson submitted a sick-call request complaining of severe pain. *Id. at p. 30.*

On October 9, Defendant Murphy submitted a consult request for Mr. Henderson to be examined by Dr. Sallam at the Jones Eye Institute. *Id. at p. 28.*

On October 29, Mr. Henderson was scheduled for a tooth extraction. *Id. at p.21*. The dentist, however, could not perform the extraction "due to his chronic d/o Sarcoidosis, and Uveitis." *Id.*

On November 20, Mr. Henderson filed a sick-call request complaining of: (1) boils all over his body; (2) an intense toothache; (3) the cancellation of his last gate-pass; and (4) "sarcoidosis interfering with all treatment options." *Id. at p.15*.

On December 5, medical staff at the Jones Eye Institute examined Mr. Henderson. *Id. at p.14*.

On December 18, Mr. Henderson submitted a sick-call request complaining of pain as a result of the "sarcoidosis pills." *Id. at p.11*. Dr. Nunn (not a party to this lawsuit) prescribed Mr. Henderson pain medication. *Id. at pp.11-12*.

On December 24, Mr. Henderson submitted another sick-call request explaining that he was suffering from "more boils . . . all from the sarcoidosis." *Id. at p.9*. Mr. Henderson requested to be examined by a physician. Defendant Onyia-Murphy noted that Mr. Henderson was stable and noted "Meds as Prescribed." *Id.*

On January 2, 2020, Mr. Henderson submitted a sick-call request requesting to be transferred to a medical unit. *Id. at p.8*. On January 7, Defendant Horan prescribed Mr. Henderson prednisone, ibuprofen, lisinopril, prazosin, and hydrochlorothiazide. *Id. at p.7*.

On January 7, Mr. Henderson filed this lawsuit. *Doc. 2*.

On January 8, Mr. Henderson underwent eye surgery. *Doc. 72-1 at p.6.*

On January 16, Mr. Henderson wrote a letter to the Jones Eye Institute and the Warden "requesting a move to medical prison. Inmate informed that he had 2 consults for Opth with JEI and pulmonology. Inmate informed that he didn't have a medical condition that would automatically move him to another unit. All current conditions could be treated here and with outside consults." *Id. at p.4.*

### C. Deliberate Indifference Claim

Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain and violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference. Negligence, even gross negligence, is not deemed "an unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105. Likewise, disagreement with treatment decisions cannot support a deliberate indifference claim. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006); *see also Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997) (where medical records show that treatment was provided; and physician affidavits state that the care was adequate, an inmate's belief that she did not receive adequate care is insufficient to create disputed material fact). Stated another way, the Medical Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional

maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)); see also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (to prevail on Eighth Amendment Claim, inmate must show that defendants' mental state was akin to criminal recklessness). Mr. Henderson "must clear a substantial evidentiary threshold" to show that the Medical Defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019).

The Medical Defendants attach the affidavit of Nannette Vowell, M.D., to their motion for summary judgment. *Doc. 72-3*. Dr. Vowell testifies that "the medical care providers at the Maximum Security Unit are capable of providing care and treatment for Mr. Henderson," and that "Mr. Henderson has had appropriate access to healthcare and that he has been provided with appropriate care and treatment for his complaints." *Id. at p.2.*

Furthermore, in his deposition, Mr. Henderson testified that, since February 2019, he was evaluated by medical staff at the Jones Eye Institute once a month. *Doc. 72-2 at p.16.* He explains that he had at least five eye operations during that time. *Id.* In addition, he was regularly seen by a pulmonologist.[6] *Id. at p.28.* Mr. Henderson also testified that he was seen by a dentist and an oral surgeon during this

---

[6] In his motion for summary judgment, Mr. Henderson contends that he was not regularly examined by a pulmonologist until he filed a number of grievances. *Doc. 80 at p.3.* Mr. Henderson, however, fails to provide any evidence to support this allegation.

time period. *Id. at pp. 28-29.* Mr. Henderson conceded that medical staff was available at the Maximum Security Unit, including a physician, advanced practical nurses, and a nursing staff. *Doc. 72-2 at p.18.* In addition, he admitted that the Maximum Security Unit also has an infirmary. *Doc. 72-2 at pp.26-27.*

According to Mr. Henderson, physicians at the Jones Eye Institute recommended that he be transferred to a medical unit. *Doc. 72-2 at p.22.* In his motion for summary judgment, Mr. Henderson contends that "Dr. Sallam recommended that arrangements be made to transfer Plaintiff Henderson to a medical facility/unit where he could receive treatment regularly and have blood tests weekly for the first months then monthly." *Doc. 78 at p.2.* The record does not support this contention.

> In Dr. Sallam's December 16, 2019 letter to Mr. Henderson, he wrote:
>
> Regarding your transfer to a medical unit, as I have indicated before, it is completely out of my hand. I have made recommendations that if we are to start CellCept [an immunosuppressive/anti-inflammatory treatment] you will need to be in a position where treatment can be administered regularly without interruptions and to be able to have blood tests, which will need to happen every month.

*Doc. 80 at p.5.*

Mr. Henderson provides no evidence that Dr. Sallam ever recommended that Mr. Henderson actually begin such treatment or receive monthly blood tests.[7] Dr.

---

[7] At Mr. Henderson's July 15 visit with Dr. Sallam, Dr. Sallam noted "[t]his patient will soon nee[d] treatment with immunosuppressives – Cellcept. I would recommend making

12

Sallam's letter, on its face, is describing something that may happen in the future -- "*if* we are to start." In the absence of any evidence such treatment was ever recommended, it is unnecessary to consider whether Mr. Henderson could have received such treatment while in the Maximum Security Unit. Mr. Henderson has failed to come forward with any evidence to support a finding of deliberate indifference.

At the summary judgment stage, Mr. Henderson's unsupported assertions that the Medical Defendants were deliberately indifferent are insufficient. "'When the movant makes a prima facie showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne*, 11 S.W.3d 531, 539 (2000)).

Here, Mr. Henderson has failed to come forward with any evidence from which a fact-finder could conclude that the treatment decisions made by the Medical Defendants were even arguably criminally reckless. Furthermore, he has failed to come forward with any evidence that any alleged delay in treatment actually caused a detrimental effect on his prognosis. See *Gibson v. Weber*, 433 F.3d 642, 646-47

---

arrangement to move him to a medical facility/unit where he can receive treatment regularly and have blood tests weekly for the first months then monthly." *Doc. 2 at p.37.* However, there is no evidence that Dr. Sallam recommended that Mr. Henderson begin that treatment.

(8th Cir. 2006) (an inmate claiming that his medical care was inadequate because of a delay in treatment must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in treatment). Finally, Mr. Henderson has not come forward with any evidence contradicting Dr. Vowell's testimony that he has received adequate medical care.

Based on a review of Mr. Henderson's medical records, during the time period in question, medical staff: (1) consistently and promptly examined him; (2) routinely referred him and transported him to outside specialists for treatment and surgery; (3) consistently provided him prescription medication, including pain medication. Such conduct could hardly be characterized as deliberate indifference. Although Mr. Henderson may disagree with the treatment decisions made by the medical staff, a disagreement in treatment cannot support a deliberate-indifference claim. Accordingly, the Medical Defendants are entitled to judgment as a matter of law.[8]

Finally, it is undisputed that Defendants Horan "is now the Regional Medical Director for Wellpath, LLC and is officed at the Central Office of the Arkansas Department of Correction." *Doc. 72-3 at p.2.* Defendants Benton and Onyia-Murphy are no longer employed by Wellpath. *Id.* Although Mr. Henderson requested

---

[8] Furthermore, Mr. Henderson is not entitled to be housed in a particular institution or unit. *Manthey v. Sabol*, 80 Fed. Appx. 538, *1, 2003 WL 22594287 (8th Cir. 2003) (unpub. per curiam) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245, 248, 103 S.Ct. 1741 (1983)).

that Defendants Benton and Horan transfer him to a medical unit, those Defendants told Mr. Henderson that was a "classification issue." *Doc. 72-2 at pp.21-22, 24*. Mr. Henderson testified that he did not know whether those individuals were members of the Classification Committee. *Id. at pp. 24-25*. He explained that Defendant Onyia-Muprhy was no longer employed at the Maximum Security Unit when he believed that the needed to be transferred, so he did not request a transfer from her. *Id. at p.24*. Accordingly, even if Mr. Henderson had produced evidence supporting his theory that a transfer was medically necessary, the Medical Defendants lack the authority to grant the requested relief.

### III. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. The Medical Defendants' motion for summary judgment *(Doc. 71)* be GRANTED and Mr. Henderson's remaining claims against the Medical Defendants be DISMISSED, with prejudice.

2. Mr. Henderson's motion for summary judgment *(Doc. 78)* be DENIED.

DATED this 17th day of August, 2021.

_____
UNITED STATES MAGISTRATE JUDGE